MAY *v.* LE CLAIRE and others, Ex'rs, etc. (No. 6077.)

BROWNING, Assignee, *v.* HURDLE and others. (No. 6073.)

SAME *v.* BRADSHAW and others. (No. 6074.)

*(Circuit Court, S. D. Illinois. December 12, 1882.)*

1. INSOLVENCY—DEEDS OF TRUST—WHEN DEEMED FRAUDULENT.
    Under the bankrupt law, as amended by the act of July, 1874, it was necessary that these things should concur in order to render a deed of trust invalid: It must have been executed within two months of the filing the petition in bankruptcy; the bankrupt must have been insolvent, or it must have been made in contemplation of insolvency; the deed of trust must have been made with a view to give a preference; the party to whom the trust deed was made must have had reasonable cause to believe that the bankrupt was insolvent at the time, and must have known that the deed of trust was made in fraud of the bankrupt law.

2. SAME—INSOLVENCY DEFINED.
    The general definition of insolvency in the bankrupt law, as stated by the courts, is an inability in the bankrupt to pay his debts as they mature in the usual course of business.

3. SAME—WHAT KNOWLEDGE ON THE PART OF THE PREFERRED CREDITOR WILL BE SUFFICIENT TO INVALIDATE THE DEED.
    The supreme court of the United States makes a distinction, in considering cases of this kind, between reasonable cause to *believe* and reasonable cause to *suspect* that a person is insolvent; the creditor must have such a knowledge of facts as to induce a reasonable belief of his creditor's insolvency; but from knowledge of certain facts on the part of the creditor, the law will imply knowledge of others.

Chancery.

(6077:) *James A. Connolly* and *McClernand & Keys,* for plaintiff. *Stuart, Edwards & Brown* and *Putnam & Rogers,* for defendants.

(6073:) *Scofield & Hooker* and *N. M. Broadwell,* for plaintiff. *C. C. Preston* and *J. H. Hungahl,* for defendants.

(6074:) *Scofield & Hooker* and *N. M. Broadwell,* for plaintiff. *J. H. Hungahl* and *Stuart, Edwards & Brown,* for defendants.

DRUMMOND, J. These three cases have been presented and argued together. They were bills filed to·set aside a trust deed executed by the bankrupt to Preston, for the use of Hurdle, dated February 12,

1878, and another trust deed to Preston, for the use of Bradshaw, dated February 25, 1878, for the reason that these deeds were given by the bankrupt to creditors by way of preference, and in violation of the provisions of the bankrupt law. Gittings became a voluntary bankrupt, by a petition filed in the district court on the eighteenth of March, 1878, under which he was adjudged a bankrupt, and plaintiff was appointed his assignee. The circumstances connected with the deed of trust given to Hurdle were as follows: Gittings had borrowed a sum of money, for which he had given his note, with Hurdle as security. He had stated to Hurdle that he would be unable to pay the note when it fell due, and that it would be necessary for Hurdle to pay it, and that he would give Hurdle security for his liability on this note; and thereupon the deed of trust in question was executed, Hurdle having given his own note to the creditor of the bankrupt for the amount due. The obligation to Bradshaw, for which the deed of trust was given, was incurred under somewhat similar circumstances, both Hurdle and Bradshaw being, at the time the respective deeds of trust were given, liable to the creditors of the bankrupt on notes which he had given for money borrowed by him. A large amount of testimony was taken, and the case was referred to the register, who made a report to the district court, finding that the plaintiff was entitled to a decree in each case, on the ground that the deeds of trust constituted an unlawful preference, and they were in violation of the bankrupt law. That report was confirmed by the district court, and from the decrees of the district court appeals have been taken to this court.

Under the bankrupt law, as amended by the act of July, 1874, it was necessary that these things should concur in order to render the deeds of trust invalid: They must have been executed within two months of the filing of the petition in bankruptcy; the bankrupt must have been insolvent, or they must have been made in contemtemplation of bankruptcy or insolvency; the deeds of trust must have been made with a view to give a preference to Hurdle and Bradshaw; Hurdle and Bradshaw must have had reasonable cause to believe that the bankrupt was insolvent at the time, and they must have known that the deeds of trust were made in fraud of the bankrupt law. The words "know" and "knowing" were, by the amendment of July, 1874, one inserted in the thirty-ninth section and the other in the thirty-fifth section of the bankrupt law, as it originally stood. The question for this court to determine is whether the plaintiff has brought himself within these various conditions of the bankrupt law, so as to be entitled to a decree. There can be no doubt that at the time the deeds of trust were executed the bankrupt was in fact insolvent, and consequently they operated to give a preference to the creditors whose debts they were made to secure; and supposing that the bankrupt, in the language of the supreme court of the United States in *Grant* v. *Nat. Bank*, 97 U. S. 82, was an ordinarily intelli-

gent man, we must assume that the deeds of trust were executed with a view to give a preference to those creditors.

The principal difficulty consists in this: Had they reasonable cause to believe that the bankrupt was insolvent at the time, and did they know that the deeds of trust were made in fraud of the bankrupt law? The general definition of insolvency in the bankrupt law, as stated by the courts, is an inability in the bankrupt to pay his debts as they mature in the usual course of business. There is abundant evidence in the record of the inability of Gittings to do this; and the evidence shows that this fact was known to the creditors secured by these deeds of trust. The struggles which the bankrupt was making in the early part of 1878, and at the time these deeds were executed, to relieve himself from the difficulties growing out of his indebtedness, were known to these creditors. The supreme court of the United States, in the case already referred to, says that reasonable cause *to believe* is something different from having reasonable cause *to suspect* that a person is insolvent; that the two phrases are distinct in meaning and effect; that the creditor must have such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency. This may be admitted, and yet it will be often difficult, if we come to analyze the state of mind of the creditor, to decide in some cases where suspicion ends and belief begins. But assuming that the definition given of insolvency, as just stated, is correct, and assuming further that they were ordinarily intelligent men, then the facts within the knowledge of the creditors, and of their trustee, Preston, must have been sufficient to produce a belief in their minds that the bankrupt was insolvent. If this is so, then it would seem to follow, as a necessary conclusion, that they knew the deeds of trust were made in fraud of the bankrupt law, because belief in the bankrupt's insolvency, and knowledge of the fact that these deeds were made to secure some of the creditors, would constitute knowledge that they were executed in fraud of the bankrupt law. It must be admitted that the cases are not free from difficulty, and they depend upon an examination and a clear understanding of all the testimony; but applying the ordinary tests, and judging of the motives of men from the facts proved, I think the fair inference is that these deeds of trust were made by Gittings, while insolvent, to give, and did give, an unlawful preference to the creditors named therein, and that they were in fraud of the provisions of the bankrupt law.

The decrees of the district court will, therefore, be affirmed.