# EAU CLAIRE NATIONAL BANK v. JACKMAN.

## ERROR TO THE SUPREME COURT OF THE STATE OF WISCONSIN.

No. 163. . Argued January 16, 17, 1907.—Decided February 25, 1907.

Where the bankrupt, within four months of the petition, mortgages his property to a creditor having knowledge of his insolvency and thereafter conveys it to a third party subject to the mortgages and the creditor forecloses and as a result of the transaction obtains a greater percentage on his claim than other creditors of the same class, the transaction amounts to a voidable preference and the trustee can recover from the creditor the value of the property so transferred.

A trustee in bankruptcy can maintain a suit to recover the value of a voidable preference without first electing to avoid such preference by notice to the creditor receiving the preference and demand for its return.

A demand is not necessary where it is to be presumed that it would have been unavailing.

The right of the trustee in bankruptcy to recover property obtained in fraud of the bankruptcy act is not varied by how the property would be administered and distributed between the different classes of creditors; all creditors, whether general or preferred, are represented by the trustee.

Where there is a voidable preference the creditor receiving it cannot, in a suit of the trustee in the state court to recover the value thereof, litigate the validity of other claims against the bankrupt and whether other creditors have received, and not been required to surrender, preferences.

125 Wisconsin, 465, affirmed.

THIS action was brought by defendant in error, hereafter called the trustee, in the Circuit Court of Eau Claire County, State of Wisconsin, against the plaintiff in error, hereafter called the bank, under section 60b of the bankrupt act of 1898, to recover the value of property which, it is alleged, was transferred by the bankrupt to the bank, for the purpose of giving the latter a preference over other creditors. Judgment was recovered by the trustee, which, on appeal, was affirmed by the Supreme Court of the State. 125 Wisconsin, 465. Thereupon this writ of error was sued out.

The complaint of the trustee alleges that on the seventh of June, 1902, John H. Young duly filed his petition in bank-

ruptcy in the United States District Court for the Western District of Wisconsin, pursuant to the act of Congress, and was on said day duly declared a bankrupt. Subsequently defendant in error was duly elected and appointed by the creditors of the bankrupt as trustee in bankruptcy, and duly qualified as such trustee.

The plaintiff in error is and was at all the times mentioned in the complaint a national bank. Young, during the four months immediately preceding the filing of his petition, was the owner and in possession of certain lumber, shingles, and lath, located at Cadott, Chippewa County, Wisconsin, and certain logs in or near the Yellow river and Chippewa river in Chippewa County, which were reasonably worth the sum of thirty-five thousand dollars. The value of all other property owned by him did not exceed the sum of $500.

On the tenth of February, 1892, Young was wholly insolvent, and owed debts which largely exceeded the value of his property, which fact was well known to him and the bank. The aggregate amount of his indebtedness exceeded the sum of $40,000, and the value of his property was substantially $35,000. He was indebted to the bank in the sum of $27,000 for moneys borrowed from time to time for a period of about two years previous to that time. On said day Young executed to the bank a chattel mortgage on 2,100,000 feet of saw logs, to secure the sum of $15,900, then owing from him to the bank, and also executed a chattel mortgage, transferring 1,000,000 feet of lumber, about 600,000 shingles and about 200,000 lath, to secure the sum of $11,100, owing by him to the bank. This indebtedness existed long prior to said mortgages, and the property transferred constituted substantially all of the property then owned by Young not exempt from execution, which facts were well known by him and the bank. The effect of the foreclosure of the mortgages would be to enable the bank to obtain a much larger percentage of its debt than would the other creditors of Young in the same class as the bank. The mortgages were given by Young and taken

by the bank 'for the sole purpose of hindering and delaying the other creditors, and were executed and received for that purpose, and the bank at the time of their execution had reasonable cause to believe that they were given with the intention to give it a preference over other creditors.

The Waters-Clark Lumber Company is a corporation of the State of Minnesota, and D. S. Clark is the president thereof and also a director in the bank, and W. K. Coffin is the cashier of the latter. On or about the tenth of March, 1902, Coffin, acting for the bank, requested Young to transfer to the lumber company, for the benefit of the bank, all of the property embraced in the mortgages, together with certain other property. Pursuant to such request Young did, on or about the tenth of March, 1902, transfer, by absolute bills of sale, to the lumber company all of the property described in the mortgages, and other saw logs owned by him. The property transferred was reasonably worth the sum of $35,000. Immediately on the execution of the bills of sale the lumber company, acting pursuant to the directions by and in behalf of the bank, took possession of the property transferred, and thereafter sold the same and applied the proceeds to the payment of the indebtedness secured by the mortgages. At the time the bills of sale were made the lumber company and the bank thought the property transferred constituted all of the available assets of Young, and that the result of such transfer and the appropriation of the proceeds thereof would result in the other creditors of Young losing all of his indebtedness to them. The lumber company, acting as vendee of said property, was in reality acting as trustee for the bank, and made such pretended purchase with the understanding and agreement with the bank and Young that it would account to the bank for the proceeds of the property transferred to the amount of his indebtedness, and that any sums realized in excess of his indebtedness should be paid to Young. The bills of sale were not executed in compliance with the statues of the State. Except as to the agreement

to pay said indebtedness, no consideration was paid by the lumber company for the property, and at the time of the transfer of the property nothing was paid to Young therefor. By reason of said transactions the bank within four months appropriated to the payment of its claims substantially all of the property of Young, which at said time was and has been ever since worth $35,000. There is no other property in the possession of the trustee, belonging to Young, out of which his other creditors can be paid.

The bank demurred to the complaint on the following grounds: The court had no jurisdiction of the subject of the action; the trustee had no legal capacity to sue, in that the complaint did not allege that authority or permission was given him to bring suit; defect of parties, in that Young and the lumber company were not made parties; and that the complaint did not state a cause of action. The demurrer was overruled, and the bank, availing itself of the permission granted, filed an answer, in which it admitted its corporate character and that of the lumber company, and the execution of the mortgages and the bills of sale, and that the instruments were not executed in the manner provided by the statutes of the State. It denied all the other allegations of the complaint, and alleged that a portion of the proceeds of the sale of the property was paid to the bank to discharge valid and existing liens which it held against the property. And it alleged that the mortgages were given for a good and valuable consideration, and that neither of them nor the payments to the bank were made or received for the purpose of giving the bank a preference over other creditors of Young, "contrary to the provisions of the bankruptcy laws," and "that, prior to the commencement of this action, the plaintiff commenced an action in this court against said Waters-Clark Lumber Company to recover from said Waters-Clark Lumber Company the purchase price of logs and other material sold by said Young to said Waters-Clark Lumber Company, and thereby elected to treat and consider said contract between

said Young and said Waters-Clark Lumber Company as legal and valid, and elected to look to and hold the said Waters-Clark Lumber Company, instead of this defendant, as liable to said trustee for all sums of money which the said plaintiff may be entitled to recover on account of the transactions mentioned in plaintiff's complaint."

Questions were submitted to the jury covering the issues in the case, except the value of the property, which, by stipulation of parties, was reserved for the court. The jury in response to the questions found that at all the days mentioned in the complaint the property transferred at a fair valuation was insufficient to pay Young's debts; that the lumber company, acting for the bank and pursuant to the arrangement between it and the bank, took the legal title to the lumber and logs for the benefit of the bank under an agreement with it and Young to account to the bank for a portion of the proceeds; that it was the intention of Young, by the execution of the mortgages and the transfer of the property, to give the bank a preference, and that the bank and officers and agents had reasonable cause to believe that Young intended to give it such preference and to enable it to obtain a greater percentage of its indebtedness than any other of his creditors of the same class would be able to obtain.

The court found that the lumber which was included in the bank's mortgage was worth $3,452.85, and that a note for that sum and value was given by the lumber company to Young and by him transferred to the bank; that the Cadott logs, included in the mortgage and sold by Young to the lumber company, were worth $10,077.84; that the up-river logs not included in the mortgage, but sold to the lumber company by Young, were worth $11,055.84, and that a note which was given as the net proceeds of the sale of both quantities of logs over and above certain labor liens was worth $2,508.14. This note was given by the lumber company to Young and transferred by him to the bank. The trustee contended in the trial court that he was entitled to recover

for the entire value of the logs and lumber, and that no credit should be allowed the bank for the sums paid by it to discharge certain liens on the property for labor claims and unpaid purchase money. The court rejected the contentions and gave judgment for the trustee in the sum of $6,254.99. In this sum was included the value of the notes.

The assignments of error are that the Supreme Court erred in the following particulars: (1) In determining that the complaint stated a cause of action. (2) In determining that the bank was liable for the value of the logs and lumber to the extent of the chattel mortgage interest of the bank therein. (3) In determining that the bank was liable for having received a preference contrary to sections 60a and 60b of the bankrupt act of July 1, 1898, as "a portion of its chattel mortgage interest in said logs, the sum of $1,335.62 as the proceeds of the sale of the portion of said logs known as the 'up-river logs,' on which logs said defendant never held any chattel mortgage and which logs were never transferred to said defendant." (4) In determining that the bank was liable for the value and moneys it received as a preference, although the trustee had not elected to avoid such preference by bringing suit to recover the same and had not elected to avoid such preference in any manner. (5) And in holding that in determining a question of preference it was immaterial under the bankrupt act whether the bank and the other creditors were of the same class, and in refusing to reverse the judgment because of the error of the Circuit Court in charging the jury that all of the creditors were of the same class. (6) In its construction of the bankrupt act in the following particulars: (a) In holding that a transfer made within four months of the bankruptcy proceedings, which enabled a creditor to obtain any portion of his debt, constituted a preference. (b) That, although the effect of the transfer in question did not operate to give the bank a greater percentage of its debt than other creditors of the same class, such transfer constituted a preference. (c) In determining,

by such rules of construction of the bankrupt act, that the evidence was sufficient to establish that the bank had reasonable cause to believe that a preference was intended. (7), (8), (9) In holding that the bank was liable for the full value of the preference received in an amount in excess of what was necessary to pay all the other creditors of the bankrupt, and claims of fictitious creditors and claims of creditors who had themselves received preference, and in not limiting the recovery to such sum as would be sufficient to pay the claims of creditors whose claims were provable. (10), (11) In affirming the judgment against the bank and not rendering judgment for it.

*Mr. James Wickham*, with whom *Mr. Burr W. Jones* and *Mr. Frank R. Farr* were on the brief, for plaintiff in error:

The questions raised by the specification of errors are all Federal questions, involving the construction of the Federal bankrupt act. Most of the questions are shown by the opinion of the state Supreme Court to have been there raised and to have been decided adversely to the plaintiff in error, and the other questions not expressly mentioned in the opinion are shown by the certificate of the Chief Justice of the state Supreme Court to have been specially set up and raised and decided adversely to the plaintiff in error. Substantially all of the questions that were involved in the bank's appeal to the state Supreme Court are the same questions that are now involved on this writ of error.

In such a case this court has jurisdiction on a writ of error issued to review the judgment of a state court. *Factors & Traders Insurance Co.* v. *Murphy*, 111 U. S. 738; *Traer* v. *Clews*, 115 U. S. 528; *Dimock* v. *Revere Copper Co.*, 117 U. S. 559; *Palmer* v. *Hussey*, 119 U. S. 96; *Winchester* v. *Heiskell*, 119 U. S. 450; *Williams* v. *Heard*, 140 U. S. 529; *Dushane* v. *Beall*, 161 U. S. 513; *McCormick* v. *Market National Bank*, 165 U. S. 538; *Farmers & Merchants Ins. Co.* v. *Dobney*, 189 U. S. 301; *Crawford* v. *Burke*, 195 U. S. 176; *Kaufman* v.

*Tredway,* 195 U. S. 271; *Thompson* v. *Fairbanks,* 196 U. S. 516; *Humphrey* v. *Tatman,* 198 U. S. 91.

The trustee has not elected to avoid, or brought suit to recover, any preference that the bank may have received, and the judgment rendered therefor cannot be sustained.

A transaction resulting in a voidable preference does not violate any law. The transaction is lawful when made subject to a possibility of being defeated by subsequent events. It continues to be lawful unless it is followed by an adjudication in bankruptcy within the statutory period. It continues to be lawful after that time unless the trustee elects to avoid it. A preference is never void, but only voidable, and no one but the trustee can elect to avoid it. *Dyer* v. *Kratzenstein,* 92 N. Y. S. 1012; *Lewis* v. *First National Bank,* 78 Pac. Rep. 990.

A creditor by merely receiving the voidable preference does not violate any legal or moral right. *Swarts* v. *Fourth National Bank,* 117 Fed. Rep. 1, 11; *Swarts* v. *Frank,* 82 S. W. Rep. 60.

A creditor receiving a preference not voidable is given the right of election by section 57*g* either to return what he received and file his claim with the other creditors, or else keep what he has received and not file his claim. *Pirie* v. *Chicago Title & Trust Co.,* 182 U. S. 438.

Where the facts are in dispute as to whether or not a certain transaction constitutes a preference, the creditor receiving the alleged preference is–by the bankrupt act necessarily called upon to determine for himself whether he will return what he has received and file his claim with other creditors, or whether he shall litigate that question and attempt to hold what he has received, in which event, in most cases, as in the case at bar, the year allowed by § 57*n* in which to file claims would expire without his claim being filed.

The bankrupt act contemplates that the trustee shall exercise his election as to whether or not he shall avoid a preference, and it also contemplates that the creditor receiving

such alleged preference must exercise an election as to· what course he shall take. Until the trustee exercises his election, no cause of action accrues. The creditor is not called upon to elect what course he shall take until the trustee has acted. It therefore follows that the trustee should exercise his· election and make his demand before commencing suit. ·

A complaint in such a case is insufficient where it fails to allege such demand and refusal. *Shuman* v. *Fleckenstein*, Fed. Cas. No., 12,826; *Brooks* v. *McCracken*, Fed. Cas. No., 1932; *Lyon* v. *Clark*, 88 N. W. Rep. (Mich.) 1046; *Wright* v. *Skinner*, 136 Fed. Rep. 694; *Capital National Bank* v. *Wilkerson*, 72 N. E. Rep. (Ind.) 247.

No fraud in the transactions was either proven or found by the court or jury. Except in cases of fraud, and except as to the right to recover a preference, the trustees take the property of the bankrupt in the same plight and condition that the bankrupt himself held it, and subject to all the equities imposed upon it in the hands of the bankrupt. *Thompson* v. *Fairbanks*, 196 U. S. 516, 526; *York Manufacturing Co.* v. *Cassell,·* 201 U. S. 344, 352, and cases there cited; Bankrupt Act, § 60*b*.

A payment to· a creditor who is entitled to priority by reason of having a claim for wages, or by reason of his having some claim placing him in a different class from other creditors, does not constitute a preference. If other creditors are in a subsequent class they are not injured by the transfer, and therefore the enforcement of the transfer does not enable the creditor receiving it to recover a greater percentage of his debt than he is entitled to. Loveland on Bankruptcy, 2d ed. 587; Collier on Bankruptcy, 4th ed. 422; *In re Henry C. King Co.*, 113 Fed. Rep. 110; *Doyle* v. *Milwaukee National Bank*, 116 Fed. Rep. 295; *Easton* v. *Garrison*, 82 S. W. Rep. (Tex.) 800.

*Mr. C. T. Bundy*, with whom *Mr. R. P. Wilcox* was on the brief, for defendant in error:

It was immaterial how the preference was given. If through

the mortgages, bills of sale, agreement or otherwise, the plaintiff in error was paid either directly by Young, or by Waters-Clark Lumber. Company, who purchased his property, at any time within the prohibited period, and it received such payment with guilty knowledge, it is liable for the amount it received. *Sterns* v. *Trust Co.*, 112 Fed. Rep. 501; *Western Tie Co.* v. *Brown*, 129 Fed. Rep. 728; *Schwartz* v. *Bank*, 117 Fed. Rep. 1; *Woolen Co.* v. *Powell*, 72 S. W. Rep. 723.

Courts have been frequently called upon to pass upon devices and schemes like the one at bar, intended to cover illegal preferences, and uniformly hold that any scheme resulting in one creditor receiving, directly or indirectly, any part of his debt, in excess of the amount other creditors of the same class would receive by an equal distribution, is void. *In re Stein,* 22 Fed. Cas. 1232; *Fleming* v. *Andrews*, 3 Fed. Rep. 632; *In re Beerman*, 112 Fed. Rep. 664; *Bardes* v. *Bank*, 98 N. W. Rep. 284; *Hackney* v. *Bank*, 98 N. W. Rep. 412; *Hackney* v. *Hargrave*, 98 N. W. Rep. 626; *In re Belding*, 116 Fed. Rep. 1016.

The whole question, however, as to whether or not the officers of the bank had reasonable cause to believe that Young intended by the sale to give it a preference, or reasonable cause to believe that it was getting a preference, is purely a question of fact for the jury and the jury have found, on ample evidence, against plaintiff in error. *Crittenden* v. *Barton*, 69 N. Y. Supp. 559; *Giddings* v. *Dodd*, 10 Fed. Rep. 338; *In re Forsyth*, 9 Fed. Cas. 465; *In re McDonough*, 16 Fed. Cas. 68; *In re Eggert*, 102 Fed. Rep. 735; *In re Graham*, 110 Fed. Rep. 135; *Hackney* v. *Clark Co.*, 94 N. W. Rep. 822; *Bardes* v. *Bank*, 98 N. W. Rep. 28.

Mr. Justice McKenna, after stating the case as above, delivered the opinion of the court.

A motion is made to dismiss on the ground that the record

presents nothing but questions of fact. It is contended that neither in the pleadings of the bank nor in any way was any right, privilege or immunity under a Federal statute specifically set up or claimed in the state courts. The only questions presented by the pleadings, it is urged, were, did the bankrupt give the bank a preference, and did the bank accept it with reasonable grounds to believe that a preference was intended? The Supreme Court, however, considered the pleadings to have broader meaning, and answered some of the contentions of the bank by the construction it gave to the bankrupt act. The case, therefore, comes within the ruling in *Nutt* v. *Knut*, 200 U. S. 12. It was there said: "A party who insists that a judgment cannot be rendered against him consistently with the statutes of the United States, may be fairly held within the meaning of § 709, to assert a right and immunity under such statutes, although the statutes may not give the party himself a personal or affirmative right that could be enforced by direct suit against his adversary." See also *Rector* v. *City Deposit Bank*, 200 U. S. 405.

On the merits of the case we start with the facts established against the bank, that the property of Young, at the time he executed the chattel mortgages and when he executed the deed to the lumber company, at a fair valuation was insufficient to pay his debts, and that by the execution of those instruments and the transfer of his property effected thereby, he intended to give the bank a preference over his other creditors, and that the bank had reasonable cause to believe that he intended thereby to give it a preference, and to enable it to obtain a greater percentage of its debt than any other creditor of Young of the same class. These, then, are the prominent facts, and seemingly justified the judgment. Against this result what does the bank urge? It urges, first, that there is included in the judgment the sum of $1,335.62, the net proceeds of the sale of certain logs, called the "up-river logs," which, it is contended, were not covered by either of

the mortgages, and that the Supreme Court, in its opinion, apparently supposed that those logs were covered by the mortgages, and erred in giving judgment therefor. This is a misunderstanding of the opinion. While the court did not explicitly distinguish between the mortgages and the deed to the lumber company, we think it is clear that the court regarded the deed, and what was to be done under it, as the consummation of the "legal wrong," to use the language of the court, which went back to the time of the mortgages. In other words, that the up-river logs as well as the other property were conveyed to the lumber company for the purpose of giving a preference to the bank.

The bank also attempts to urge against this conclusion the different views expressed by the trial court and the Supreme Court upon the finding of the jury as to the relation which the lumber company stood to the bank. The jury found, in answer to questions 4 and 5, that the lumber company, acting for the bank, took the legal title for the benefit of the latter under an agreement with Young and the bank to account to it for a portion of the proceeds. The trial court said that this was not a finding "that the lumber company was the agent of the bank." The Supreme Court thought that the jury "pretty clearly decided" that the bank was a principal and the lumber company "a mere agent" in the matter. It is true the Supreme Court immediately added: "However, the evidence seems to clearly establish that the lumber company purchased the property from Young in the regular course of business, without any understanding with the defendant, other than that its interest in the property as mortgagee and claimant under numerous statutory labor liens should be recognized, and the equivalent thereof in money delivered to it out of the proceeds." And this was deemed sufficient to accomplish the preference which Young intended to give the bank. The court passed over as not important the distinction between the notes given by the lumber company to Young as the purchase price of the lumber.

These minor matters out of the way, we come to the more important contentions of the bank. These contentions are expressed in the form of questions, the first of which is: "Can a trustee in bankruptcy, under the provisions of the bankruptcy act, lawfully maintain a suit to recover the value of a voidable preference without first electing to avoid such preference by notice to the creditor receiving such preference, and by demand for its return?"

·It is urged by the bank that· he cannot, and to sustain this contention, that a preference is not void but' voidable. And voidable solely at· the election of the trustee, who must indicate a purpose to do · so. The argument is that a preference being voidable, the creditor receiving it is not in default until he fails to or refuses to surrender it on demand. Prior to that time his possession is rightful and lawful, and he is not guilty of any wrong, tort or conversion. And the demand, it is further urged, must be made before suit, for, it seems also to be contended, that the creditor must be given an opportunity to exercise the election given him by subdivision $g$ of § 57 of the bankrupt act to surrender the preference and prove his claim. We say, "seems to be contended," because we are not clear that counsel for the bank claims that the rights of a creditor under § 57$g$ depend upon the action of the trustee. Counsel say:

"The bankrupt act, therefore, contemplates that the trustee shall exercise his election as to whether or not he shall avoid a preference, and it also contemplates that the creditor receiving such alleged preference must exercise an election as to what course he shall take. Until the trustee exercises his election, no cause of action accrues. The creditor is not called upon to elect what course he shall take until the trustee has acted. It therefore follows that the trustee should exercise his election and make his demand before commencing suit."

And this, it is argued, is more: than a mere question of state practice, and involves the question whether the property consisting of the alleged preference is any part of the trust

estate. If it be intended by this to assert that the action of the creditor under § 57g is to wait upon or depends upon the action of the trustee under § 60, we do not assent, and nothing can be deduced, therefore, from the supposed relation of those sections as to the necessity of a demand before suit. We do not see how such a demand can even be an element in the consideration of the creditor, whether he will surrender the preference and prove his debt. The right of surrender exists as well after suit as before suit. *Keppel* v. *Tiffin Savings Bank*, 197 U. S. 356.

Independently of such considerations, whether the election by a trustee to avoid a preference should be exercised by a demand before suit or can be exercised by the suit itself might be difficult to determine if it were necessary on the record. 1 Chitty on Plead. 176, and cases cited; *Shuman* v. *Fleckenstein*, Fed. Cases, No. 12,826; *Brooks* v. *McCracken*, Fed. Cases, No. 1932; *Wright* v. *Skinner*, 136 Fed. Rep. 694; *Goldberg et al.* v. *Harlan*, 67 N. E. Rep. 707. But we do not think it is open to the bank to urge the first. The bank, it is true, demurred to the complaint and urged as a ground of demurrer the absence of an allegation of a demand. But the bank did not stand on the demurrer. It answered, and not only traversed the allegations of the plaintiff, but set up an independent defense, and showed that a demand would have been unavailing, and a demand is not necessary where it is to be presumed that it would have been unavailing. *Davenport* v. *Ladd*, 38 Minnesota, 545; *Bogle* v. *Jordan*, 39 Kansas, 31. Besides, it appears that a demand was made before suit. In determining from what date interest should be given the trial court said: "There is evidence of a demand, but I think only a short time elapsed until action was commenced, so that it will make little difference whether interest is computed from the time of the demand or the commencement of the action."

The trial court instructed the jury substantially, in the words of subdivision *a* of section 60 of the bankrupt act, as

to when a debtor should be deemed to have given a preference, and, in explanation of the intention of the debtor, said "to intend to prefer would be to make a transfer for the purpose of enabling the bank to obtain a greater percentage of its debt than any other debtors of the same class." And, defining this class of creditors, said further, "so far as creditors' rights are involved in this action, they are all of the same class, by which is meant they would receive the same percentage of their claims. Claims for taxes or wages within certain times so as to be preferred would be of a different class. But claims of general creditors, like those approved in the Young bankruptcy proceedings, are all of the same class." The bank excepted, and assigned as error the charge that all of the creditors were of the same class. Disposing of the assignment the Supreme Court said: "Whether that is right or wrong does not seem to in any way concern the case. The action, as we have indicated is simply one in trover to recover the value of property which, as is alleged, was, in fraud of the bankrupt act, wrongfully converted by defendant to its own use. Whether there was one or more classes of creditors, and in what manner the property sought to be recovered would, if the suit were successful, be administered, did not vary in the slightest degree the legal rights of the plaintiff. If the property was obtained by the defendant in fraud of the bankrupt act, plaintiff was entitled to recover the same, and this is the only question involved."

The bank contests this view, and contends that, if accepted, "it would be impossible to ascertain whether or not the preference had been received without first determining the question of whether the enforcement of the transfer would enable the bank to recover a greater percentage of its debt than other creditors of the same class." But there is a question of fact to be considered. It was a question of fact what claims were proved against the estate. At the trial the learned judge who presided described them in his instructions as claims of general creditors. In his memorandum opinion

he said that from his minutes and the statements of the evidence in the briefs of counsel he was inclined to believe that the point was not well taken, and that the evidence did not show that the effect of the enforcement of the transfer would be to enable the bank to obtain a greater percentage of its debt than other creditors of the same class. The bank, in its brief in this court, says, "certain other claims were filed and allowed in the bankruptcy proceedings as preferred claims. These were probably claims for wages after the time of the transfers in question." In the list of claims referred to some only are marked preferred. But, granting that they all were, they were represented by the trustee.

The other questions propounded by the bank are based on the sixth assignment of error. We will not examine the arguments of counsel for the bank in detail. Their fundamental contention is that the transfers to the bank were not invalid as a preference if their enforcement would not operate to give the bank a greater percentage of its debt than other creditors of the same class would receive. And such, it is further contended, was not the result, and it is intimated that claims of possible and fictitious creditors were in effect considered. But this contention encounters the facts found by the jury and the trial court. We have already seen what, in the opinion of the trial court, the evidence established as to the effect of the transfers, and the jury found that Young was insolvent at the time they were made, and that the purpose of their execution was to give the bank a preference and to enable it to obtain a greater percentage of its debt than other creditors of Young of the same class. These findings were not disturbed by the Supreme Court, and we must accept them as stating the facts established by the evidence, although counsel seem to invoke an examination by us of the record against them. Taking them as true, they show a case of preference and grounds to set it aside. The bank also contends, in effect, that in such suit the validity of all other claims against the bankrupt can be litigated and

whether they have received voidable preferences and have not been required to surrender them. The broad effect of the contention repels it as unsound. To yield to it would transfer the administration of a bankrupt's estate from the United States District Court to the state court.

*Judgment affirmed.*