STUART, Trustee, Respondent, vs. FARMERS BANK OF CUBA
CITY, Appellant.

*September 11—November 27, 1908.*

*Trial: Instructions to jury: Bankruptcy: Preferential payments:
Fraudulent conveyances: Suspicion: Courts: Federal decisions:
Stare decisis.*

1. In an action by a trustee in bankruptcy to recover a payment
made to a creditor of the bankrupt, alleged to have been made
as a preference, the court instructed the jury that the words
" 'reasonable cause to believe that it was intended to enable the
[creditor] bank to obtain a greater percentage of its debts than
other creditors would be able to obtain' does not mean reason-
able cause to suspect such intention. It is not enough that the
creditor had some cause to suspect that his debtor did not have
sufficient property left to pay an equal percentage to other cred-
itors of the same class, but he must have such knowledge of
facts as to induce a reasonable belief thereof, *or of circum-
stances to put him on inquiry,* in order to find that the creditor
had reasonable cause to believe that a preference was intended."
*Held* erroneous, since the jury were thereby warranted in find-
ing against the defendant bank, although it did not have rea-
sonable cause to believe in the bankrupt's intent to give a pref-
erence.

2. Under the federal bankruptcy act it is only when the facts known
to the creditor are such as would induce a present belief in the
ordinarily prudent and intelligent business man that his debtor
is insolvent and intends a preference that the creditor is pro-
hibited from collecting or securing his debt or a part thereof.

3. That state of mind which in a reasonable man would lead to in-
quiry is called mere "suspicion," and as regards notice of fraud-
ulent intent under which conveyances by a debtor to a cred-
itor with intent to defraud are held void, the burden the state
law has placed upon the freedom of doing business, that if a
reasonably prudent man would be moved to inquiry, and in-
quiry would disclose facts leading to a belief, that is sufficient,
is for the protection of creditors against actual fraud.

4. Apart from some statutes in case of assignments, there is noth-
ing in state policy, nor in the policy of the common law, to
prevent a debtor from honestly paying one creditor to the ex-
clusion of others, although knowing and intending that there-
by he would give a preference.

5. The construction of the federal bankruptcy act finally rests with the federal courts and at last with the supreme court of the United States, and in case of no difference of opinion among those courts, or if the supreme court has finally spoken on that subject, the state court should be guided by such utterance, otherwise it is the duty of the state court to decide for itself.

6. When the state court upon full consideration has decided for itself the proper construction of the federal bankruptcy act, the rule of *stare decisis* would seem to require adherence to that decision, especially where the view thus established is supported by the later utterance of the federal supreme court.

TIMLIN and KERWIN, JJ., dissent.

APPEAL from a judgment of the circuit court for La Crosse county: J. J. FRUIT, Circuit Judge. *Reversed.*

One Ralph B. Luckey was on the 5th day of February, 1907, adjudged bankrupt upon an involuntary petition filed January 18, 1907. For years he had been a general merchant at Cuba City, doing his banking business with the defendant, and for some time had also been treasurer of the school district. Early in 1895 Luckey was indebted to the bank in the sum of about $4,000. He also was in arrears to the school district, having shortly before received $10,000 of school district money, deposited the same in his general bank account, and so checked against that account that only some $4,000 remained to his credit therein. The cashier of the bank was one of the sureties on his bond and became disturbed at the condition, and urged that he at least make good the school moneys. After some negotiation the two sureties upon his school treasurer bond and the two other members of the board undertook to sign notes for $7,750, which, with the moneys to his credit at the bank, would make good that fund. It is claimed by the defendant that the bank refused to lend this $7,750 to Luckey, but merely consented to loan it to the persons who signed the note. The loan was in fact made, however, on the note of the parties other than Luckey and the money placed to the credit of the school district in the name of Luckey as treasurer. At the same time his own

notes for $4,000 to the bank were taken up, thereby discharging certain indorsers, and his new notes to the amount of $4,000 given in lieu thereof, which were secured by a written guaranty of the same persons who signed the $7,750 notes. A transfer from his general bank account to the bank account of the school district was made so as to make that account equal the school moneys in his hands. He continued to do business, paying in one way and another nearly $4,000, which were applied upon the $7,750 notes, until October or November, 1906, when the bank, and perhaps his sureties, became impatient, the indebtedness not having been reduced as promised. After considerable urgency, and efforts on his part to reduce his stock and make payments, he finally, early in November, sold out his business at the full amount of the inventory of the stock and nearly $1,000 bonus. At that time $1,000 was paid by the purchasers and placed by him in his general bank account. The balance was to be paid when the inventory of the stock was to be completed. This was accomplished December 5, 1906, at which time he received checks for $7,300 from those purchasers, which he handed to the bank officers for application upon the claims which the bank held. The officers of the bank credited this $7,300 into his general account, already containing $600 or $700, and then made applications by debit charges against that account sufficient to satisfy all his notes, and delivered up his notes, including the $7,500 note not signed by him. How far such applications were authorized by him so as to constitute voluntary payments was a matter of contention between the parties. After the trustee in bankruptcy had been appointed, suit was brought in the circuit court for Dane county (venue being afterwards changed to La Crosse county) to recover the amounts of such payments from the defendant bank as unlawful preferences under the bankruptcy law. Upon the trial the parties stipulated that the court might find that Luckey was in-

solvent December 5, 1906, as a part of the special verdict, and that the payments by Luckey would enable such bank to obtain a greater percentage of its debts and claims than would be obtained by other creditors having claims of the same class, and that, after special verdict had been returned, the court should find the amount paid by Luckey to the bank in December, 1906, and a finding of Luckey's intent in making the payments in case he should determine it to be necessary, and also to find whether the sums of money received by the bank were offsets or not. Thereupon the court submitted two questions to the jury: *First.* Were the loans of April 11, 1905, made by the defendant bank, of $7,750, loans to Ralph B. Luckey? Answered "Yes." *Second.* Did the bank officers on December 5, 1906, have reasonable cause to believe that by the payments made by Luckey to said bank on said day it was intended thereby to give the bank a preference? Answered "Yes." No findings were made by the court, but, after due motions to raise all questions present on this appeal, judgment was entered in favor of the plaintiff for $7,915.12, with interest thereon from the commencement of the suit, from which judgment defendant appeals.

For the appellant there was a brief by *S. E. Smalley* and *Morris, Riley & Dudgeon,* attorneys, and *Olin & Butler,* of counsel, and oral argument by *Mr. H. L. Butler, Mr. M. H. Dudgeon,* and *Mr. Smalley.*

For the respondent there was a brief by *Richmond, Jackman & Swansen,* attorneys, and *Lacy, Brown & Lacy,* of counsel, and oral argument by *S. T. Swansen.* They contended, *inter alia,* that the instruction quoted in the opinion was largely taken from *Jackman v. Eau Claire Nat. Bank,* 125 Wis. 465, which case was afterwards affirmed by the supreme court of the United States (*Eau Claire Nat. Bank v. Jackman,* 204 U. S. 522), and cited as other authorities supporting the instruction, *Hargreaves Bros. v. Hackney,* 74 Neb. 700, 104 N. W. 855, 856; *Capital Nat. Bank v. Wilk-*

*erson,* 36 Ind. App. 467, 473, 75 N. E. 837, 839; *Parker v. Black,* 143 Fed. 560, 562, 151 Fed. 18; *In re Hines,* 144 Fed. 543, 545, 546; *Sundheim v. Ridge Ave. Bank,* 138 Fed. 951; *Wetstein v. Franciscus,* 133 Fed. 900; *In re Andrews,* 135 Fed. 599; *Crittenden v. Barton,* 59 App. Div. 555, 5 Am. Bankr. Rep. 775, 777; *In re Virginia H. Mfg. Co.* 139 Fed. 209; *In re Pease,* 129 Fed. 446, 448, 450, 451; *Houck v. Christy,* 152 Fed. 612; *Walbrun v. Babbilt,* 16 Wall. 577, 21 L. Ed. 489; *In re Knopf,* 146 Fed. 109; *Coder v. McPherson,* 152 Fed. 951, 952; *Roberts v. Johnson,* 151 Fed. 567; *Western T. & T. Co. v. Brown,* 129 Fed. 728, 730; *Stevens v. Oscar Holway Co.* 156 Fed. 90, 19 Am. Bankr. Rep. 399, 403; *In re Lynden M. Co.* 156 Fed. 713, 714; *In re McMurtrey,* 142 Fed. 853, 856; *Pittsburgh P. G. Co. v. Edwards,* 148 Fed. 377; *Hardy v. Gray,* 144 Fed. 922, 931; *Wright v. Sampter,* 152 Fed. 196, 198; *In re Coffey,* 19 Am. Bankr. Rep. 148, 165; *John Naylon & Co. v. Christiansen H. Mfg. Co.* 158 Fed. 290, 293; *In re W. W. Mills Co.* 162 Fed. 47.

The following opinion was filed September 29, 1908:

DODGE, J. This case, as presented by the record, is involved in much confusion. Certain issues of fact were submitted to the jury and other controverted issues were withheld from it, some of them by consent of counsel that the court might find upon them, and others apparently without any consent at all of the attorneys. The issues other than those which were submitted to the jury were: *First.* Was Luckey insolvent? *Second.* Did the defendant have reasonable cause to believe so? *Third.* Did the transaction between the bankrupt and the defendant at the time of the alleged payment constitute a payment or transfer by the bankrupt, or merely an exercise by the creditor of its right *in invitum* to apply its indebtedness on open account to him upon his debts to it? This question was severable in its applica-

tion to the whole transaction and also to several individual items of so-called payment. *Fourth.* Was the defendant the real party benefited by the payment, or the so-called sureties ? . On all these questions there was at least claimed to be some evidence in favor of the defendant's contentions; on some of them, that it clearly preponderated in defendant's favor. There is no indication in the record that any tribunal has passed upon these questions of fact specifically, unless we indulge in the presumption, because they were so plainly in issue, that the court must be deemed to have passed upon them in rendering judgment against the defendant. In view, however, of the conclusion we have reached upon one of the assignments of error, which conclusion must necessitate a new trial, we forbear to express our opinion whether the evidence is sufficient to support either the verdict of the jury upon the two questions submitted to them or the apparent conclusion of the court upon the questions of fact not so submitted.

Error is assigned upon the instruction under which the second question of the special verdict was submitted to the jury. A material and illustrative part of that instruction was as follows:

"The jury are instructed that the words 'reasonable cause to believe that it was intended to enable the bank to obtain a greater percentage of its debts than other creditors would be able to obtain' does not mean reasonable cause to suspect such intention. It is not enough that the creditor had some cause to suspect that his debtor did not have sufficient property left to pay an equal percentage to other creditors of the same class, but he must have such knowledge of facts as to induce a reasonable belief thereof, *or of circumstances to put him upon inquiry,* in order to find that the creditor had reasonable cause to believe that a preference was intended."

It is contended that the last portion of this instruction is erroneous; that only when the facts known to the creditor are such as would induce a present belief in the ordinarily

prudent and intelligent business man that his debtor is insolvent and intends a preference is he prohibited by the bankruptcy act from collecting or securing his debt or a part thereof. The court has obviously by these words, and others to similar effect elsewhere in the charge, instructed the jury that although the facts that the creditor then knows may not be sufficient to induce that belief, yet, if a reasonably prudent man would be put upon inquiry thereby, and if upon such inquiry he might learn other facts, then he is chargeable with notice of the insolvency and intent to prefer, if such facts, which he did not know but upon inquiry would be likely to ascertain, would warrant such belief. There is considerable variance in expressions of courts upon this subject. The supreme court of the United States has in several cases declared that the reasonable ground of belief intended by the bankruptcy act is the present knowledge of the creditor; that he may safely act upon what he knows, and that, if the reasonably prudent and intelligent man would not be led to a belief of insolvency or preferential intent by such facts, it is not the purpose of the bankruptcy act to prevent collection or securement of debts in the ordinary course of business; and there are many decisions to like effect by other courts. *Merchants' Nat. Bank v. Cook,* 95 U. S. 342, 346; *Grant v. Nat. Bank,* 97 U. S. 80, 82; *Barbour v. Priest,* 103 U. S. 293, 297; *Stucky v. Masonic Sav. Bank,* 108 U. S. 74, 2 Sup. Ct. 219; *In re Goodhile,* 130 Fed. 471, 12 Am. Bankr. Rep. 374; *Sundheim v. Ridge Ave. Bank,* 138 Fed. 951, 15 Am. Bankr. Rep. 132; *In re Hines,* 144 Fed. 543, 16 Am. Bankr. Rep. 495, 497; *May v. Le Claire,* 18 Fed. 164; *Blankenbaker v. Charleston State Bank,* 111 Ill. App. 393. On the other hand we find in the utterances of several of the inferior federal courts, and of some of the state courts, appended to this doctrine the further rule that if a reasonably prudent man would be moved to inquiry, and inquiry would disclose facts leading to a belief, that is suf-

ficient. *In re Eggert,* 98 Fed. 843; *In re Virginia H. Mfg. Co.* 139 Fed. 209, 15 Am. Bankr. Rep. 135; *Wright v. Sampter,* 152 Fed. 196, 18 Am. Bankr. Rep. 355; *In re Coffey,* 19 Am. Bankr. Rep. 149; *Bardes v. First Nat. Bank,* 122 Iowa, 443, 98 N. W. 284. Whether such courts have always recognized the distinction between the two ideas or considered that they were only defining and making more clear the rule of the supreme court, we are unable to say. But we think it clear upon any careful analysis of the ideas expressed that these cases import an additional serious burden upon ordinary transactions in the collection of debts within the four months preceding bankruptcy and while the debtor is in the ordinary course of business. The latter rule as laid down is substantially the rule of Wisconsin in regard to notice of fraudulent intent under which conveyances by a debtor to a creditor with intent to defraud creditors are held void. *Rindskopf v. Myers,* 87 Wis. 80, 57 N. W. 967. That state of mind which in a reasonable man would lead to inquiry is called mere "suspicion." This burden the state law has placed upon the freedom of doing business for the protection of creditors against actual fraud; but, apart from some statutes in case of assignments, there is nothing in state policy, nor indeed in the policy of the common law, to prevent a debtor from honestly paying one creditor to the exclusion of others, although knowing and intending that thereby he will gain preference. *Bleiler v. Moore,* 94 Wis. 385, 69 N. W. 164; *Shepard v. Ostertag,* 106 Wis. 82, 81 N. W. 1103. The bankruptcy act has added a new and very serious limitation upon the freedom of business intercourse. An act, however much in the ordinary course of business, by which a merchant pays a debt is liable to be reviewed and rescinded if it happen that within four months thereafter the debtor becomes bankrupt. It is therefore entirely reasonable that a less stringent rule of caution be required in the mere reception of payment or

security by a creditor simply because it ultimately results in preferring him than in the case of a transfer to him, whether by payment or otherwise, which is made with the actual intent to defraud other creditors.   The distinction between the first rule above stated, namely, that of a reasonable belief deducible from the facts then within the knowledge of the creditor, and the second rule, namely, his chargeability with facts which he might on inquiry ascertain, was carefully considered in the recent case in this court of *Suffel v. McCartney Nat. Bank,* 127 Wis. 208, 106 N. W. 837. There the circuit court had expressly found that the facts known by the creditor at the time of the payment were not of themselves reasonable cause to believe in insolvency or preferential intent; but that if the rule applicable to fraud cases in our own court were to be applied, they were such "as would naturally produce in the mind of a reasonably intelligent man a doubt or suspicion of the solvency, and were such as would put a reasonably prudent man upon inquiry." Upon this state of facts the circuit court, relying upon the above cases in the supreme court of the United States, held that the payment did not constitute an illegal preference. That case was most carefully considered in this court after able argument, where was brought to our attention the case of *In re Eggert,* 102 Fed. 735, and the approving case of *Jackman v. Eau Claire Nat. Bank,* 125 Wis. 465, 104 N. W. 98, which is one of the cases asserting the duty of inquiry to be upon the creditor, and the rule applied by the circuit court was approved.   The *Eggert Case* was referred to at the end of the opinion with no further comment thereon upon this subject, but, obviously, by the decision reached the rule of that case embodied in the last two lines of the portion quoted, requiring inquiry, was rejected.   The *Jackman Case* was affirmed by the supreme court of the United States, but the particular question in hand was in no wise considered.   204 U. S. 522, 27 Sup. Ct. 391

Of course the construction of the bankruptcy act finally rests with the federal courts and at last with the supreme court of the United States. If there were no difference of opinion among those courts, or indeed if the supreme court had finally spoken on that subject, we should of course be guided by such utterance. But where variant views are entertained it is the duty of this court to decide for itself. When it has done so once upon full consideration, at least the rule of *stare decisis* would suggest the duty and certainly the advisability of adhering to the rule laid down. Especially does that course seem proper in the present instance, where the view established in the *Suffel Case* is supported by the later utterance of the federal supreme court. We think the law must be held settled in accordance with that case, and that the instruction given in the case at bar warranted the jury in finding against the defendant, although it did not have the reasonable cause to believe in the bankrupt's intent to give a preference as those words must be construed. Thereby error, obviously prejudicial, was committed.

*By the Court.*—Judgment reversed, and cause remanded for new trial.

TIMLIN, J. (*dissenting*). "If a bankrupt shall have given a preference within four months . . . and the person receiving it or to be benefited thereby . . . shall have had reasonable cause to believe that it was intended thereby to give a preference it shall be voidable by the trustee, and he may recover," etc. Subd. *b,* sec. 60, Bankr. Act July 1, 1898 (ch. 541, 30 U. S. Stats. at Large, 562, U. S. Comp. Stats. 1901, p. 3445). The trial court in its instructions to the jury construed this statute with reference to its words and with reference to pre-existing rules of law to mean that neither suspicion that a preference was intended, or doubt on this point, was sufficient to create liability; that the party

sought to be charged must have had reasonable cause to be-
lieve that a preference was intended, but this reasonable
·cause to believe might be inferred from facts which came to
the knowledge of such party and which were sufficient to
put him upon inquiry, which, if made, would result in knowl-
edge. It will thus be seen that a federal question is pre-
sented, the trustee claiming the right to recover upon the
bankruptcy act so construed, which right is denied by the
reversal of the judgment of the court below, and it will be
further seen that the whole controversy turns upon whether
·or not the ultimate fact of reasonable cause to believe that it
was intended to give a preference can be proven by the old
·and well-settled mode of proving the larger concept of actual
knowledge or the equal concept of notice. This mode of
proof and its effect was recognized in *Oliver v. Piatt,* 3 How.
333, 410; *Wollensak v. Reiher,* 115 U. S. 96, 5 Sup. Ct.
1137; *McClure v. Oxford,* 94 U. S. 429, 432; *The Lulu,* 10
Wall. 192, 201; *Angle v. N. W. Mut. L. Ins. Co.* 92 U. S.
330, and other similar cases, none of them involving the
construction of this statute, but all cases where one was
sought to be charged, not merely with having reasonable
cause to believe, but with having actual knowledge or with
having notice.

Furthermore, it is a rule of construction of statutes that,
"in all doubtful matters and when the statute is in general
terms, it is subject to the principles of the common law. It
is to receive such a construction as is agreeable to that law
in cases of the same nature." 2 Lewis' Suth. Stat. Constr.
(2d ed.) § 455, and cases. The words "common law" in
this respect do not mean the English common law, or com-
mon law as distinguished from equity jurisprudence, but
the general case law of the forum. "Equality is equity" is
also a maxim having some weight in the construction of this
statute. Next, this statute has never been construed by the
·supreme court of the United States as understood in the ma-

jority opinion. The cases of *Merchants' Nat. Bank v. Cook,* 95 U. S. 342; *Grant v. Nat. Bank,* 97 U. S. 80; *Barbour v. Priest,* 103 U. S. 293; and *Stucky v. Masonic Sav. Bank,* 108 U. S. 74, 2 Sup. Ct. 219, deal with a different question and with a different statute. In none of these cases was it considered or decided what evidence was proper or sufficient to make a case against one as "having reasonable cause to believe such person insolvent." It is firmly established that mere doubt or suspicion does not constitute such reasonable cause; but as I read the cases it is nowhere decided that reasonable cause to believe one insolvent could not be established by proof that the party to be charged had brought home to him knowledge of facts and circumstances sufficient to put him on inquiry, but unreasonably refrained from inquiry. Besides, reasonable cause to believe that a person is insolvent is a different proposition from reasonable cause to believe that it was intended thereby to give a preference. The former is reasonable cause to believe in the existence of a condition of inadequacy of assets or inability to pay. The latter is reasonable cause to believe in the existence of a mental condition. The latter could only be established by inference from facts and circumstances, except, perhaps, in those impossible cases where the payer would make express confession of his mental condition. The only case that I know of that has reached the supreme court of the United States involving the construction of the identical statute here under consideration is *Eau Claire Nat. Bank v. Jackman,* 204 U. S. 522, 27 Sup. Ct. 391. In the decision of that case in this court, reported in 125 Wis. 465, 104 N. W. 98, this court said:

"Whether defendant had reasonable cause to believe that Young was insolvent within the meaning of the bankrupt act was a question of fact, and it was chargeable with notice of such fact as reasonable inquiry in view of the circumstances with respect to the debtor's condition, which were brought home to it, might fairly be expected to disclose."

The supreme court of the United States in affirming this judgment did not expressly notice the matter covered by the foregoing quotation, but it was passed in silence, and neither this court nor the eminent counsel engaged, nor the supreme court of the United States, seem to think it subject to criticism.

I see nothing in the case of *Suffel v. McCartney Nat. Bank*, 127 Wis. 208, 106 N. W. 837, in conflict with this view. In the last-mentioned case the situation presented by the findings of the court below was first an absolute negation of the condition of liability mentioned in that section of the bankruptcy act in question; second, an additional finding that there was evidence which might naturally produce, not belief, but a doubt or suspicion, and that doubt or suspicion was such that under the rule of law applicable to fraudulent grantees it would put a reasonably prudent man upon inquiry. The utmost, then, that the case presented to this court was a condition in which it was settled by the findings of the court below that there was evidence in the case of facts which would or might have put an ordinary, reasonable person upon inquiry; but notwithstanding this, the person sought to be charged did not have reasonable cause to believe that it was intended to give a preference. These two findings are not inconsistent. The conclusion arrived at in the majority opinion assumes that they are always inconsistent and antagonistic. Still I think it quite obvious that in all that large class of cases, of which this is one, where evidence of facts sufficient to suggest inquiry is only an item of evidence, tentative and rebuttable as regards the final inquiry, it may be and frequently is true that, although the jury may from proof of facts sufficient to suggest inquiry infer a reasonable cause to believe that a preference was intended, still they are not bound to do so, but may find, notwithstanding such evidence, from other evidential facts and circumstances that there was no such reasonable cause to believe. The whole subject is very thoroughly and learnedly

discussed in 2 Pom. Eq. Jur. (3d ed.) §§ 597, 598 *et seq.*
How can we consider these subsidiary and recognized modes
of proving notice or knowledge of the intentions or of the
rights of another abrogated by a statute of the United States
in the form quoted? The very nature of the inquiry neces-
sary under the bankruptcy statute in this particular brings
us within those rules. They are the result of wisdom and
experience, and were established to facilitate just such in-
vestigations. Bankruptcy cases in which this mode of proof
was recognized as proper: *In re Eggert,* 102 Fed. 735, 43
C. C. A. 1; *Allen v. McMannes,* 156 Fed. 615; *Thomas v.
Adelman,* 136 Fed. 973; *Dokken v. Page,* 147 Fed. 438, 77
C. C. A. 674.

To reiterate: Well-established rules permit knowledge or
notice of the right of another or of the intention of another
to be inferred as matter of fact in most instances, but as a·
legal conclusion in some few instances from evidence that
the party sought to be charged had knowledge of such facts
and circumstances as would put a reasonably prudent person
upon inquiry. The majority opinion holds that a proper
construction of the bankruptcy act forbids such mode of
proving the cognate fact that one had reasonable cause to
believe a preference was intended, and for this reason re-
verses the judgment of the court below. I consider this
construction of the bankruptcy act erroneous, and see nothing
in the act itself or in the federal decisions to warrant it.
The excerpt from the charge of the court below quoted in the
majority opinion is rather incomplete, but, taking the whole
charge of the court below, it is in substantial conformity with
these rules of evidence, hence the judgment of the court
below should be affirmed.

KERWIN, J. I concur in the foregoing opinion of
Mr. Justice TIMLIN.

A motion for a rehearing was denied November 27, 1908.