Read v. Moody.

WINDHAM COUNTY, FEBRUARY TERM, 1888.

Present: ROYCE, Ch. J., VEAZEY, TAFT and ROWELL, JJ.

## LAVANT M. READ, ASSIGNEE IN INSOLVENCY OF CLARENCE L. MOODY, v. LEWIS P. MOODY.

### Insolvent Law.

In an action by an assignee claiming to recover on the ground that the defendant purchased property of the insolvent debtor in fraud of law, where the referee reported that he was not able to find that the defendant had reasonable cause to believe that the debtor was insolvent, but submitted to the court whether certain facts found should have put him upon inquiry; namely, that the transfer was not made in the usual course of business; that the debtor sold out his entire stock to one person; that defendant made no inquiry as to his financial condition; *Held*, that these were *prima facie* evidence of fraud, and threw the burden of proof on the defendant to sustain the validity of the transaction; and that he was put upon inquiry.

Heard on the report of a referee, September Term, 1887, Ross, J., presiding.

Judgment for the plaintiff to recover $2,678.82. The referee found in part:

"Charles P. Wheeler, and Clarence L. Moody, a son of the defendant, were partners in the business of a meat market at Bellows Falls, from October 1, 1878, till March 17, 1884, when Wheeler sold his interest to Moody for $2,500, taking two notes therefor, one for $800, secured by a mortgage on a piece of real estate owned by the company, and the other for $1,700, secured by a lien on the personal property of the company. It was agreed that said Wheeler should proceed to collect the debts due the company, amounting to about $7,000, and that the debts due from the company, amounting to about $10,000, should be paid by him as he made collections. The last of the following July the partners made a final settlement of their partnership business, by which it was found that Moody was indebted to Wheeler in the further sum of $2,500, for which he gave him his note without security.

" On said 11th day of March, the fresh and salt meats and lard that the company had on hand were sold to the defendant for $1,645.43, and he gave his note payable to the company for the sum. This sale was made to close out the company business, and with the understanding that the defendant bought the property for his son. This note was reckoned among the assets of the company in said July settlement. At that time it was in the National Bank of Bellows Falls, where it had been deposited by Wheeler & Moody as collateral security for the payment of a $1,000 note given by them to said bank, and endorsed by the defendant. Clarence L. had the property for which the note for $1,645.43 was given, and it was understood between him and his father that he owed his father for it. He continued said business in his own name until the 30th of the next August, when he sold the business, book accounts and other property pertaining to the market to said Wheeler for about $7,300, Wheeler deducting from the purchase price the amount of his three notes against said Clarence L., and giving him for the balance one note for $1,000, payable in fifteen days, and another note for $1,266.35, payable in thirty days from date.

" Said Wheeler bought said business and property in order to get payment of his notes of said Clarence L., and knowing he could sell it to Bidwell & Proctor, to whom he did make a sale of the same simultaneously with his purchase of it.

" On the morning of September 1, 1884, at about five o'clock, said Clarence L. called at the defendant's house and handed him said two notes of $1,000 and $1,266.35, which Wheeler had given him, and left the State by an early train, never to return to reside. Said Clarence L. called his father from his bed to give him these notes, gave him no directions how to apply them, or what to do with them. He merely said he had sold out to Wheeler, and ' here are the notes,' and that he was going to Boston. On the same day the defendant saw Wheeler and informed him that he held these notes. The note for $1,645.43 was got out of the bank by Wheeler paying the bank the $1,000 note which it held against Wheeler & Moody, and the defendant applied the $1,000 note and the note for $1,266.35 on the notes for $1,645.43 and $1,000 which his son owed him, and delivered Wheeler's said notes to him."

The other facts are sufficiently stated in the opinion.

Read *v.* Moody.

*George A. Weston* and *Haskins & Stoddard*, for the defendant.

To enable the plaintiff to recover, he must affirmatively establish: 1. That Clarence L. must have been insolvent at the time he made said payment or transfer. 2. The defendant must have had reasonable cause to believe that his son was thus insolvent. 3. Said payment must have been made with a view to give a preference. Bump on Bankruptcy, p. 844; *Larkin* v. *Hapgood*, 56 Vt. 601.

In *Forbes* v. *Howe*, 102 Mass. p. 436, it is said, " The proposition of ' reasonable cause to believe,' is one of fact, to be established by proof and found by the jury. In order to render a verdict for the plaintiff it was necessary for the jury to find that the defendant had reasonable cause to believe that Josselyn intended the mortgage as a preference." The only claim which the plaintiff can urge to maintain an unlawful preference is that said payment was not made in the ordinary course of business, and was by virtue of section 1861 of Revised Laws, *prima facie* evidence of fraud.

The question whether a certain transaction was out of the ordinary course of business, within the meaning of the statute, is a question of law. Bump, Fraud. Con. 26; Bump on Bankruptcy, 852; *Nary* v. *Merrill*, 8 Allen, 451.

The transaction must have been out of the usual course of the *business of the debtor.* Cases *supra.* Such a course of business is only *prima facie* evidence of fraud, and the presumption may be rebutted. Bump, Bankruptcy, p. 844; *Nary* v. *Merrill, supra; Tapley* .v. *Forbes*, 2 Allen, 23; *Stevens* v. *Blanchard*, 3 Cush. 169; *Abbott* v. *Shepard*, 142 Mass. 18; *Toof* v. *Martin*, 13 Wall. 40.

The facts reported by the referee totally overcome this presumption of fraud, if found to exist.

The referee found that defendant " supposed his son had been doing a fairly profitable business."

It is not the purpose of the. law relating to insolvency to prevent a creditor from collecting what is due him, but rather

to encourage and make him vigilant in this respect, and whatever he fairly secures upon a meritorious claim or honest debt, he is entitled to hold. Bump on Fraud. Con. 187.

*L. M. Reed* and *Waterman & Martin*, for the plaintiff.

The principal question is as to the amount of the plaintiff's judgment. The statute, ss. 1860–1, R. L., provides that " the assignee may recover the property or the value thereof," etc. The purpose of the insolvent law is to provide for an equal distribution of the debtor's property. Bump, Bankruptcy, p. 815. The transfer was not in the usual and ordinary course of business. Bump, p. 817.

Reasonable cause to believe means a state of facts or circumstances which would lead any prudent man to make inquiries. " It will not do to ask protection on account of ignorance when a small amount of inquiry would have given all necessary information." Bump, Bankruptcy, 811, 812.

The defendant was put upon inquiry. Bump, 814, 815; 16 Wall. 577.

The opinion of the court was delivered by

VEAZEY, J. The referee finds every element of fact entitling the plaintiff to recover except one. He says : " I am not able to find as a matter of fact, upon the evidence, that the defendant had reasonable cause to believe his son was insolvent at the time of the transfer of said notes." Then he submits to the court, as matter of law, to determine whether the facts found should have put the defendant on inquiry. It is plain that if the defendant had made inquiry he would have found that his son was insolvent. Was he put upon inquiry? This must be determined upon all the facts reported. One fact found, viz., that the transfer was not made in the usual course of business, was by the statute *prima facie* evidence of fraud (sec. 1861, R. L.), but not conclusive. Another fact known to the defendant, that his son, the debtor, had sold out his business, his entire stock, to one person, is also *prima facie*

evidence of fraud. *Walbrun* v. *Babbitt*, 16 Wall. 577. Either of these facts were doubtless sufficient, unexplained, to entitle the plaintiff to a recovery. The question is whether the referee has reported other facts which relieve the transaction of the fraudulent aspect imported by these adverse facts, so that, as a prudent man, charged, as he was, with knowledge of the insolvent law, he was bound to make inquiry, which would have disclosed the true condition.

The referee reports, as before stated, that he cannot find that the defendant knew his son was insolvent, or had reasonable cause to believe him insolvent. "He supposed his son had been doing a fairly profitable business, and was worth something above what he might owe." He held a mortgage as security for what his son owed him; but it does not appear how long it had rested on the property, and on application of his son, who told him he was going to sell out, he released the mortgage. Two or three days thereafter the son told the father that he had sold out to Wheeler, who had formerly been his partner, and handed him the notes in question, which the father took and applied on the debt against his son, which had been secured as aforesaid. This was done under peculiar circumstances, and without a word of inquiry by the father, or of explanation or direction by the son.

These facts had some tendency to show that the father thought his son was financially sound, but the referee also finds that the defendant "made no inquiry of his son why he was going to sell out, and made no attempt to ascertain from him or Wheeler, or any other person, his son's financial condition."

Herein was the defendant's fault. He was bound to make inquiry. He had no right to rely upon his impressions up to the time of these transactions of unusual nature and out of the ordinary mode of transacting such business. The presumption or *prima facie* evidence of fraud arising therefrom could only be overcome by proof on the part of the defendant that he took the proper steps to find out the pecuniary condition of

his son. He was bound to use all reasonable means, pursued in good faith, for this purpose. The *prima facie* evidence of fraud threw the burden of proof on the defendant to sustain the validity of the transactions. He chose to remain ignorant of what the necessities of the case required him to know. He thereby took the risk of the impeachment of the transactions by the assignee in insolvency in case his son should, within the time limited in the statute, be declared a bankrupt. These propositions are well sustained by authority. *Walbrun* v. *Babbitt, supra,* and cases there cited.

Judgment affirmed.