FRED BARDES, Trustee, Appellant, v. FIRST NATIONAL
   BANK OF HAWARDEN, IOWA, THE BANK OF ALCESTER,
   F. E. WATKINS AND CHARLES R. ALLEN.

Bankruptcy:  PREFERENCES:  EVIDENCE.   Where a creditor has
   knowledge of facts and circumstances respecting his debtor's
   financial condition sufficient to put a reasonably prudent man
   on inquiry, it is sufficient to constitute reasonable cause to
   believe the debtor insolvent.   Evidence in an action to set
   aside a conveyance under the bankruptcy law of 1898 consid-
   ered and held sufficient to put the one taking the conveyance
   on inquiry.

*Appeal from Sioux District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

WEDNESDAY, JANUARY 27, 1904.

ACTION by plaintiff, as trustee of Frank T. Walker, a bankrupt, to set aside a conveyance of property made within four months preceding the filing of the petition in bankruptcy. Decree for defendants. Plaintiff appeals.—*Reversed.*

*Lohr, Gardiner & Lohr* for appellant.

*Milchrist & Scott* and *Hutchinson & Plank* for appellees.

McCLAIN, J.—It is provided in section 60b of the national bankruptcy law (Acts July 1, 1898, Chapter 541, 30 statute 562 [U. S. Comp. St. 1901, p. 3445]) that: "If a bankrupt shall have given a preference within four months before the filing of a petition, * * * and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover' the property or its value from such person." The preference alleged in this case consisted of a conveyance by the bankrupt, within a short time before the filing of the petition in bankruptcy, of a stock of goods at Alcester, S. D., to defendant Charles R. Allen, the proceeds of which were immediately delivered to F. E. Watkins, president of the two banks which are defendants in this action, and in payment of promissory notes held by said banks against said bankrupt. It seems to be conceded in argument that, if the intention in making the sale was to give a preference to the two banks over other creditors in the disposal of the bankrupt's property, then the conveyance to Allen was void, and should be set aside, and the property conveyed should be

treated as assets of the bankrupt estate. And the sole question is whether, within the language of the statute, Watkins and Allen "had reasonable cause to believe" that the intention in the sale of the stock to Allen and the transfer of the proceeds thereof to Watkins for the two banks was with intent to give a preference. The material facts as to the circumstances attending the sale of the stock of goods were as follows: The bankrupt was, in December, 1898, a merchant engaged in the retail clothing business at Hawarden, Iowa. He had a branch stock at Alcester, about thirty miles distant. He was indebted to the two banks, of which Watkins was president, on notes coming due the 1st of January following, for about $1,500, which it was understood between him and Watkins should be paid at maturity. During the latter part of December and the first part of January, drafts against the bankrupt to the extent of about $1,000 had been received at the Hawarden Bank, and remained unpaid. Under these circumstances, on January 14th, Watkins had insisted to Walker that these notes to the banks must be met, and Walker had suggested that he could not pay them without selling his stock at Alcester, and also suggested that, if Watkins could assist him in making a sale of the stock, he might have a commission for doing so. The next day (Sunday) Watkins spoke to Leggett, a brother-in-law and clerk of defendant Allen, another clothing merchant of Hawarden, about buying the Alcester stock, and that night Walker, Allen, Leggett, and Watkins drove from Hawarden to Alcester, invoiced the stock, concluded a sale thereof from Walker to Allen at 65 per cent. of its wholesale price as invoiced, without any deduction for freight paid, and Allen executed to Walker his promissory note for the price agreed upon ($1,764), which was at once delivered to Watkins. Watkins and Walker the next morning drove back together from Alcester to Hawarden, arriving at the latter place about 7 or 8 o'clock, when they went to the Hawarden Bank, where Watkins paid Walker the balance of the face of the Allen note after deducting Walker's indebtedness to the two banks with 5 per cent. commission for nego-

tiating the sale and ten per cent. discount. Allen's note thus transferred was due in August following, without interest. During the forenoon of the same day Walker had another interview with Watkins, during which he executed a general assignment for the benefit of his creditors, making Watkins assignee. In the subsequent bankruptcy proceedings, which were instituted prior to March 1st following, claims against Walker were filed and approved aggregating $12,714.18, and the only assets of the bankrupt discovered consisted of the stock of merchandise at Hawarden, which was appraised at $2,453.70.

That the facts thus briefly stated tend of themselves to show that Watkins and Allen, as ordinary business men, had reasonable cause to believe that Walker intended by this transaction to give a preference to the two banks represented by Watkins, can hardly be questioned. It is contended, however, that the testimony as to the dealings between Walker and Watkins negatives the inference which would otherwise be drawn from the facts detailed, and negatives any reasonable ground of belief on the part of Watkins that Walker was then insolvent, or had any intention to hinder or delay the collection of the claims of other creditors. Watkins testified that in January, 1898, Walker made a statement to him of his property and resources, showing that he was reasonably worth about $16,000, his property consisting principally of his stock of goods at Hawarden, valued at $6,000, and a farm in Nebraska, valued at $4,600, and other real estate, valued at $2,500, and that he owed at that time about $2,000, including the indebtedness of $1,500 due the two banks of which Watkins was president. Watkins further testifies that he had no knowledge of any indebtedness of Walker, and no reason to believe that he was insolvent, until after the transaction in question. It is argued that the mere fact that Walker failed to pay drafts of $1,000 which were presented to him in December and the first part of January, and was also unable to pay the notes for $1,500 to the banks of which Watkins was president, would not indicate insolvency if Walker was in

fact worth $16,000; and it is claimed that a person is insolvent within the statutory language (Bankruptcy Act July 1, 1898, chapter 541, section 1, paragraph 15, 30 Statutes 544, 545 [U. S. Compiled Statutes 1901, page 3419]) only when the aggregate of his property shall not, at a fair valuation, be sufficient in amount to pay his debts, and that the mere temporary inability of Walker to pay the claims against him was not an indication of insolvency. But it is more reasonable to say, on the other hand, that, as all business men know, a merchant engaged in business will be anxious to protect his credit, and will not fail to meet his obligations at maturity without some good reason, if he has the means with which to do so; and Watkins or his banks, who had been loaning money to Walker, must have known that reasonable conduct on the part of Walker, if he had property of any such value, would have dictated an attempt to procure further loans on the security of his property, instead of sacrificing it at little more than 50 per cent. of its value to him, for he was not proposing to sell out his business at Hawarden; and even if he desired to close out his business recently established at Alcester, on the ground that it was not profitable, he could better afford to remove the stock to his Hawarden store than sell it at 50 per cent. discount. Such considerations as these would certainly have suggested to Watkins the inquiry whether Walker had any such financial resources as he had pretended to have in the statement made a year before. The circumstances clearly pointed to insolvency, and were enough to at least put Watkins on inquiry; the result of which would have been the disclosure of the fact that Walker was unquestionably insolvent. It must be borne in mind that the transaction was unusual. A banker does not usually go thirty miles with a debtor on a Sunday night for the purpose of enabling him to make a sale of property at a great discount in order that the proceeds may be appropriated to the payment of his indebtedness, unless the banker thinks he is insecure. We concede the legal proposition contended for in behalf of defendants

that a mere suspicion of financial embarrassment is not enough to charge the creditor with knowledge of insolvency. *Grant v. National Bank,* 97 U. S. 80 (24 L. Ed. 971); *Farmers' & Merchants' Bank v. Wilson,* (Neb.) 95 N. W. Rep. 609. But it is enough to constitute a reasonable cause to believe him insolvent that the facts and circumstances with reference to the debtor's financial condition which are brought home to the creditor are such as would put an ordinarily prudent man upon inquiry, which, if pursued, would lead to knowledge of insolvency. *In re Eggert,* 102 Fed. Rep. 735 (43 C. C. A. 1); *In re Beerman* (D. C.) 112 Fed. Rep. 663. Cases under state insolvency statutes are not strictly in point, because the language of the statutes may not be the same as the federal bankrupt act, and yet the following cases, and those cited in the opinions therein, are suggestive illustrations of what is sufficient to put a creditor upon injury as to the probable insolvency of his debtor; *Matthews v. Chaboya,* 111 Cal. 435 (44 Pac. Rep. 169); *Reed v. Moody,* 60 Vt. 668 (15 Atl. Rep. 345); *Chipman v. McClellan,* 159 Mass. 363 (34 N. E. Rep. 379); *Holcombe v. Ehrmanntraut,* 46 Minn. 397 (49 N. W. Rep. 191.)

We reach the conclusion, therefore, with confidence that Watkins and Allen had reasonable cause to believe that this conveyance of property by Walker was made while he was insolvent, and the conveyance must therefore be set aside, and judgment of the lower court is REVERSED.