## UTAH ASSOCIATION OF CREDIT MEN v. BOYLE FURNITURE COMPANY.

No. 2195. Decided June 17, 1911. Rehearing denied September 27, 1911 (117 Pac. 800).

1. BANKRUPTCY—EVIDENCE. In an action by a bankrupt's trustee for value of personal property transferred to a creditor as an alleged preference, evidence *held* insufficient to justify a finding that the bankrupt's wife was a partner in his business as a matter of law. (Page 523.)

2. BANKRUPTCY—INSOLVENCY. In determining whether an alleged bankrupt was insolvent at the time of an alleged preferential transfer, all his property which has value must be included, including property exempt under the state law or transferred in payment of or as security for a just debt, irrespective of whether it constitutes a preference or not, but not property transferred in fraud of creditors. (Page 524.)

3. BANKRUPTCY—INSOLVENCY—VALUE OF PROPERTY. Where nearly a year prior to bankruptcy a bankrupt conveyed his real estate to his wife, it was error, in an action by the bankrupt's trustee to recover an alleged preference, to permit the bankrupt to testify as to the value of such real estate, and to consider its value in determining the question of the bankrupt's solvency at the time of the transfer, since the wife could not be deprived of any right she had in the property in that proceeding, to which she was not a party. (Page 525.)

4. BANKRUPTCY—PREFERENCES—INSOLVENCY—QUESTION FOR JURY. In an action by a bankrupt's trustee to recover an alleged preference, evidence *held* to require submission of the question of the bankrupt's solvency at the time he made the transfer to the jury. (Page 525.)

5. BANKRUPTCY — PREFERENCES — CREDITOR'S KNOWLEDGE. Under Bankr. Act, July 1, 1898, c. 541, section 60, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418), prohibiting preferences, it is not necessary that the creditor, receiving a preference, actually knew or believed that the bankrupt was insolvent in order to justify its recovery; it being sufficient if the receiving creditor had reasonable cause to believe that the bankrupt was insolvent. (Page 526.)

6. BANKRUPTCY—PREFERENCES—RECOVERY—INSOLVENCY—SCHEDULES. In a suit by a bankrupt's trustee to recover an alleged preference, the bankrupt's schedules filed with the trustee are admissible on the issue of insolvency. (Page 527.)

7. BANKRUPTCY—RES JUDICATA—CLAIMS IN BANKRUPTCY—ALLOWANCE—PREFERENCES. Where a bankrupt while insolvent returned certain property to a creditor and received credit therefor, the fact that the creditor thereafter filed a claim for the balance of his account which was allowed did not constitute an adjudication of the fact that the transfer of such assets for credit did not constitute a preference, and was not therefore *res judicata* of such issue against the trustee. (Page 528.)

8. BANKRUPTCY—RELEVANCY—OTHER SIMILAR TRANSACTIONS. In a suit by a bankrupt's trustee to recover an alleged preference consisting of a return of merchandise to a creditor while the bankrupt was insolvent, evidence that on prior occasions the bankrupt had returned merchandise to defendant for which credit had been given was irrelevant. (Page 529.)

9. EVIDENCE—CONCLUSIONS. In an action to recover a preference, a question asked of the bankrupt concerning the amount of his indebtedness to a particular creditor at a particular time, and whether he paid him all he owed him, was not objectionable as calling for a conclusion. (Page 530.)

10. BANKRUPTCY — PREFERENCES — ACTION TO RECOVER — EVIDENCE — BANKRUPT'S BOOKS. In a suit by a bankrupt's trustee to recover an alleged preference, either party may have recourse to the bankrupt's books if he has kept any, and, if the bankrupt's memory is at fault with respect to any matter or item disclosed by the books, they will control if shown to be correct. (Page 530.)

11. BANKRUPTCY—PREFERENCES—RIGHT TO RECOVER. In order that a bankrupt's trustee may recover an alleged preference, he must show that the transfer was made within four months of the filing of the bankrupt's petition, that the bankrupt was insolvent at the time that the preferred creditor knew or had reasonable cause to believe that the bankrupt was insolvent, and that such transfer was intended as a preference, and that the effect of the transfer was to give the creditor a greater percentage of his claim than other creditors of the same class would obtain if the transfer was permitted to stand. (Page 531.)

APPEAL from District Court, First District; *Hon. W. W. Maughan*, Judge.

Action by Utah Association of Credit Men against the Boyle Furniture Company.

Judgment for defendant. Plaintiff appeals.

REVERSED, WITH DIRECTIONS TO GRANT NEW TRIAL.

*Stephens, Smith & Porter* for appellants.

*Halverson & Pratt* for respondent.

FRICK, C. J.

This action was brought by a trustee in bankruptcy to recover an alleged preference received by one of the creditors of the bankrupt.

The controlling facts, briefly stated, are: That on the 6th day of April, 1909, a petition for involuntary bankruptcy was filed against one William B. Jenson, hereafter called bankrupt, a merchant at Brigham City, Box Elder County, Utah, and that on the 7th day of May following he was adjudged an involuntary bankrupt; that the appellant herein

was duly appointed trustee of said bankrupt's estate; that on the 14th day of February, 1909, the bankrupt transferred, or returned, to the respondent, who was one of his creditors, a large part of his stock of merchandise consisting of furniture and other articles usually sold by retail furniture dealers. The bankrupt was called as a witness by appellant, and in substance testified that on the 14th day of February, 1909, he was indebted to respondent; that on said day he transferred to it out of his stock of goods, a large portion of which he had previously purchased from the respondent, merchandise of the value of $850 as part payment of an indebtedness amounting to $1478.19; that after making said transfer, without making any inventory, he estimated the value of his stock on hand at $1000 to $1100. From the evidence of the bankrupt when construed most favorably to respondent it may be assumed, for the purposes of this decision, that the bankrupt's assets and liabilities on February 14, 1909, just before the transfer was made were about as follows: Stock on hand, $1950; store fixtures, $100; household furniture and goods, $300; book accounts, $300. Total, $2650. Liabilities secured, and unsecured, $4508. The bankrupt, however, also claimed that he had further assets in the form of real estate of the value of $4500 which he said was incumbered to the extent of $2600. This left an equity in his favor if construed as an asset, of the value of $1900. If this be added to the $2650 of personal property, it is claimed that the value of the bankrupt's property at the time of the transfer was at least $4550, while his liabilities, secured and unsecured, amounted to only $4508. There was, however also evidence from which a jury might find the value of the bankrupt's estate considerably less than the foregoing amount. For instance, the bankrupt in estimating the value of his stock of merchandise at $1950 fixed the value of the goods returned to respondent at $850. Respondent, however, only gave him credit for $679.55, or $170.45 less than the bankrupt claimed. This would reduce the value of the stock from $1950 to $1778.45. There was also other evidence that the stock of goods, after the transfer had been made, was not of the value of $1000 or

$1100 as claimed by the bankrupt, but that its value was less than $300. The goods transferred to respondent were packed and taken from the store of the bankrupt on Sunday, and were transported in its delivery wagons from Brigham City to Ogden, a distance of about twenty miles. The evidence of the bankrupt is also to the effect that, before he transferred the goods to respondent, he informed its manager of his assets and liabilities. According to his testimony, his statement showed his liabilities to be $4108.94. The details with respect to his assets as made in the alleged statement are not made to appear, but the bankrupt insists that by including the real estate his assets in excess of his debts at the time he made the statement to respondent amounted to about $1700, of which fact he informed respondent's manager. Respecting the ownership of the real estate in question, the undisputed evidence is to the effect that up to July 15, 1908, the bankrupt was the owner thereof, and that on that date he conveyed the same to his wife, which conveyance was on the 8th day of September, 1908, duly recorded in the records of Box Elder County. The consideration expressed in the deed of conveyance is $100 and other valuable considerations. Upon this real estate the store building in which the bankrupt carried on his business was situate and in which he lived with his family. The bankrupt also testified that his wife was a partner in the business, but that it had always been conducted in his name. In answer to the question whether his wife invested any cash in the business, he said: "Oh, when we started out, she did. Q. How much? A. Oh, she put in about $100 I think." It was also stipulated that respondent allowed the bankrupt credit on his account for the goods transferred to it in the sum of $679.55, and that it filed the remainder of the account as a claim against the bankrupt's estate with the referee in bankruptcy, and was allowed the sum of $944.87 as the amount due it from the bankrupt. There is also evidence that the bankrupt's unsecured liabilities amounted to $3108.94, while the aggregate of his personal property after excluding the real estate was worth $2650.

Upon substantially the foregoing evidence the respondent's counsel moved the court to direct the jury to return a verdict for respondent, which was done, and this appeal is from the judgment entered upon said verdict.

The assignments are numerous, but we shall consider only such as we deem material.

One of the material and perhaps the most important one of the alleged errors arises as follows. For the purpose of proving the assets and liabilities of the bankrupt at the time of the transfer, the bankrupt was called as a witness by appellant. Counsel showed by the witness what his assets which were in the form of personal property and the value thereof at said time were. Upon cross-examination, however, counsel for respondent asked the witness with respect to the real property, and, over appellant's objection that said evidence was "immaterial and incompetent" because it had already been shown that the bankrupt did not own the real estate inquired about, or any real estate, was permitted to show by the witness that the value thereof in his opinion was $4500. Counsel for appellant strenuously insist that the court committed prejudicial error in admitting this evidence, and in considering the real estate as a part of the bankrupt's estate. Counsel for respondent defend the ruling of the court upon the ground that the business carried on in the name of the bankrupt was in fact owned by himself and his wife as co-partners.

In other words, it is contended that the business was owned by a copartnership composed of the bankrupt and his wife, and that the real property, as well as the personal property, constituted the assets of this firm or copartnership. The only evidence of such a partnership was given by the bankrupt, and, when he was required to state how the partnership between himself and his wife was established and what their legal relations in that regard were, he said: "She was simply my partner in my business as any other man's wife is a partner in his life's work." This, and his further statement that she put into the business at some time not disclosed about $100, is all the evidence that there

was respecting the copartnership. When it is remembered that the business was always conducted in the name of the bankrupt, that he alone is proceeded against as a bankrupt in the bankruptcy proceedings, that there is absolutely no evidence that the wife was ever held out as a partner or claimed to be such, and that the real estate had as early as 1908 been conveyed to her for what upon the face of the deed appears to be a good and sufficient consideration, it may well be doubted whether there was sufficient evidence of the partnership to submit to the jury. But, whether there was or not, the evidence is entirely insufficient to authorize the court to conclude that such a partnership existed as a matter of law, as was apparently done, in directing a verdict. We say apparently done, for this reason: If there was no partnership, then, *prima facie,* at least, the real estate in question cannot be considered as an asset of the bankrupt and, if it was not an asset of his then his liabilities at the time he made the transfer of the property in question were in excess of the value of all of his property when taken, as the bankruptcy act provides, at "a fair valuation."

The rule to be followed in determining whether a person is insolvent or not is perhaps as well stated by Mr. Loveland in his work on Bankruptcy (3d Ed.), p. 187, as it is stated anywhere. He says:

"In computing the assets of the debtor to determine his solvency or insolvency all his property which has value should be included. It has been held that in determining the question of solvency there should be included property exempt under the state law, and property transferred in payment of or as security for a just debt, irrespective of whether it constitutes a preference or not. But, where property is transferred in fraud of creditors, the statute contemplates that the bankrupt shall not have the benefit of its valuation in determining whether he is solvent."

The real property ostensibly belonged to the bankrupt's wife. The title was in her, and we cannot see how she could be deprived of any right she may have in the property in any proceeding to which she is not a party. While she may hold the property in trust for the bankrupt, yet that question can-

not be determined without at least giving her an opportunity to be heard. *Prima facie,* at least, the real property did not belong to the bankrupt, but was owned by some one else, and hence we think that the court could not in this proceeding and from the statements of the bankrupt alone determine the ownership of the property as was apparently done. While all the property in which the bankrupt has an interest, either legal or equitable, may through proper actions be reached by the trustee for the benefit of creditors, yet the property that was transferred in fraud of creditors, and which can only be reached through litigation, cannot be considered property of the bankrupt upon the question of solvency or insolvency. (See Loveland on Bankruptcy (3d Ed.), 438; *York Mfg. Co. v. Cassell,* 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782, 15 Am. Bankr. Rep. 633; Collier on Bankruptcy, 420.)

In view of the proceeding and the pleadings we are clearly of the opinion that the court erred in permitting the bankrupt to testify to the value of the real estate in question, and for the same reason the court erred in considering the value of said real estate in determining the question of solvency. We do not mean that under no possible circumstances can the real estate be considered as a part of the bankrupt's property, but what we decide is that it could not be so considered in this proceeding in view of the pleadings and the evidence.

It is also insisted that the court erred in taking from the jury the question of whether the bankrupt was insolvent at the time he made the transfer in question. This no doubt was a question of fact which the court had no right to pass on as a question of law, unless there was no evidence upon the subject, or in case the evidence was clear and without dispute that the aggregate of the bankrupt's property "at a fair valuation" was sufficient to pay his debts at the time the transfer in question was made. While the evidence is not satisfactory, yet there was considerable evidence upon the subject of what property the bankrupt owned, and the value thereof, and also upon the extent of his liabilities at the time he made the transfer. In view that it was ad-

mitted that the bankrupt was adjudged insolvent within four
months after the transfer was made, there was, therefore,
sufficient evidence upon the question of insolvency to take the
case to the jury, and the court erred in taking it from their
consideration. (*Jackman v. Eau Claire Nat. Bank,* 125
Wis. 465, 104 N. W. 98, 115 Am. St. Rep. 955.)

It is further contended that the court erred in not submitting the question of whether the respondent as a creditor
of the bankrupt did or did not have reasonable cause to know
or believe that the bankrupt was insolvent at the time the
transfer in question was made, and that thereby it was intended to give respondent, and that it was receiving, an illegal preference. We think that the contention is sound. It cannot be doubted that the foregoing questions, ordinarily at
least, are questions of fact for a jury. In *Hackney v. Raymond Bros. Co.,* 68 Neb. 624, 94 N. W. 82, the Supreme
Court of Nebraska in passing upon this question says:

"Whether a creditor had reasonable cause to believe his debtor
insolvent within the purview of section 60 of the bankruptcy act is
a question of fact."

It is further held in that case that it is not necessary that
the creditor actually knew or believed that the debtor was insolvent, but it is enough if, in view of the facts and circumstances, he had reasonable cause for believing the debtor insolvent. To the same effect are the following cases: *In
re Eggert,* 43 C. C. A. 1, 102 Fed. 734; *Bardes v.
Bank, etc.,* 122 Iowa, 443, 98 N. W. 284; *Sundheim
v. Ridge Am. Bank* (D. C.), 138 Fed. 951. In view that the
case must be retried, we refrain from discussing the evidence
upon the propositions now under consideration, except to
state that in our judgment there was some evidence upon
which a finding by the jury that respondent had reasonable
cause for believing that the bankrupt at the time of the
transfer was insolvent within the purview of the bankruptcy
act, and that he intended to give, and that respondent was receiving, an illegal preference over the other creditors would
be authorized.

It is also contended that the court erred in excluding the schedules of liabilities made by the bankrupt in the bankruptcy proceedings. *In re Docker-Foster Co.* (C. C.), 123 Fed. 191, it is held that the books of the bankrupt within four months of the date of filing the petition in bankruptcy are competent evidence on the question of insolvency, and in this connection the court says: "The schedules and the inventory and appraisement are also evidence upon the same question." *Hackney v. Hargraves,* 68 Neb. 639, 99 N. W. 678, is a case like the one at bar, and in that case it is expressly held that the "schedules of liabilities filed in the bankruptcy proceedings" are admissible in evidence. It is further said: "It can scarcely be doubted that the schedules of liabilities as against parties to the controversy" are admissible in evidence. It is also held that a creditor of the bankrupt who it is alleged obtained a preference is a party to the bankruptcy proceedings, and that in an action by the trustee in bankruptcy against such a creditor to recover an alleged preference the schedules of liabilities are proper evidence upon the question of insolvency. It is argued, however, by respondent's counsel, that one ground of their objection to the admission of the schedules in this case was that the schedule offered in evidence had no filing mark on it, and that the court may have excluded it for that reason alone. The schedule in question is not made a part of the bill of exceptions, and hence we cannot say whether there was a filing mark upon the one offered or not. The schedule offered was, however, identified by the bankrupt as one of several duplicates that he had made out and signed, and that the one in question was a duplicate of the one filed. That is, it was made to appear that the bankrupt's attorney had prepared several duplicate originals, and that the one offered was one of said duplicates or originals. It would have been preferable, no doubt, if appellant had produced the schedule actually filed with the trustee, and, if it had done so, there would be no question respecting its right to have reviewed the court's ruling in excluding the schedule. Nor could it then be con-

tended that the error was not prejudicial. In all of the cases to which we have referred it no doubt is contemplated that the schedules filed with the trustee in bankruptcy are the ones to be produced as evidence. It is, however, not necessary to determine at this time whether the appellant can avail itself of the error in excluding the schedule in question, for the reason that the judgment must be reversed upon other grounds. What we decide, therefore, is that the schedules filed by the bankrupt in the bankruptcy proceedings are proper evidence in an action against a creditor of the bankrupt to recover back an alleged preference obtained by such creditor when such schedules are properly identified, and that the production and admission of secondary evidence of such schedules is governed by the same rules which govern the production and admission of such evidence in other cases, and that the same is true with respect to the admission of duplicate originals.

Counsel for respondent, however, contend that the court's rulings in taking the case from the jury and in directing the entry of judgment are right because the question of whether respondent obtained a preference or not is *res judicata*. This contention is based upon the fact that respondent subsequent to the transfer of the property in question 7 filed the unpaid portion of its claim against the bankrupt's estate with the trustee in bankruptcy, and that such claim was by him allowed in full. It is argued, therefore, that the trustee in passing upon and in allowing the respondent's claim must have adjudged that it was a proper one for allowance, and that the deduction made from the entire account or the credit allowed thereon by respondent for the value of the goods received by it from the bankrupt was a proper credit, and hence the trustee of necessity must have passed upon the question that the receiving of the goods for which credit was given was not a preference within the purview of the section of the bankruptcy act, which prohibits the giving or receiving of preferences. Counsel have cited 1 Remington on Bankruptcy, 792-1771, *Clendenning v. Bank,* 12 N. D. 51, 94 N. W. 901, and *In re Stalker* (D. C.), 123 Fed. 961, as sustaining their contention. The two cases

referred to do not sustain counsel's contention. Nor was the question under consideration involved in those cases, and hence could not have been decided. Remington, therefore, stands alone. We cannot see how the filing of a claim with the referee in bankruptcy against the estate of the bankrupt and the allowance thereof by the trustee can by the widest stretch of the rule governing the question of *res judicata* be brought within that doctrine. Certainly the question of whether the creditor filing the claim had theretofore obtained a preference from the bankrupt or not is not necessarily involved as an incident either of the filing or the allowing of the claim as filed. Nor can we see how the question is in any form presented to the trustee for adjudication. In short, we cannot see how any of the elements upon which the doctrine of *res judicata* rests are involved. We are clearly of the opinion that counsel's contention in this regard cannot be sustained. Such is also the weight of authority upon the question. In *Buder v. Columbia Distilling Co.*, 96 Mo. App. 558, 70 S. W. 508, 9 Am. Bankr. Rep. 331, it is expressly held that in passing upon and allowing a claim filed against a bankrupt estate the trustee does not adjudicate whether the creditor filing the claim has obtained a preference or not, and that allowing a claim in no way affects the right of the trustee to sue for and recover back such a preference from the creditor whose claim has been allowed as aforesaid. (See, also, Brandenburg on Bankruptcy [3d Ed.], p. 605, and Loveland on Bankruptcy [3d Ed.], p. 620.)

Appellant also insists that the court erred in permitting respondent to prove that on prior occasions appellant had returned merchandise to respondent for which credit had been given as in the present instance. We cannot see how such evidence had any relevancy whatever. One of the material issues was whether the bankrupt was insolvent when the goods in question were returned. Another was whether respondent had reasonable cause to believe that he was insolvent, and whether a preference was intended by the transfer. What had transpired between the parties at

a time when there was no question respecting the bankrupt's solvency could shed no light upon that or any of the other material questions in the case. We think the court erred in admitting the evidence.

There are also numerous assignments of error based upon the rulings of the court in sustaining objections to questions propounded by appellant's counsel to the bankrupt and other witnesses. It is not necessary to review these assignments separately. Nearly all of the objections to questions asked by appellant's counsel of the bankrupt were erroneously sustained. The bankrupt, as is disclosed by the record, as to appellant, was an adverse witness. In view of this and in view of the nature of the proceedings, considerable latitude should have been allowed in examining the bankrupt so far at least as the inquiry related to his property and the extent of his liabilities. While, as we have seen, the schedule filed by the bankrupt is evidence, yet he may not have scheduled all his liabilities, or may not have listed all of his assets. The transactions involved in proceedings like the one at bar partake somewhat of the nature of fraud, and hence the examination should be permitted to be thorough and searching if necessary.

Nor can we agree with the court that when counsel asked the bankrupt how much he was indebted to a particular creditor at a particular time, or whether he paid him all he owed him, he was asking for a mere conclusion. It was asking for a fact which may be assumed to be directly within the knowledge of the bankrupt. Of course, the bankrupt may not remember the exact amount he owed to any particular person at any particular time, but that is no reason why he should not be required to give his best recollection with regard to the matter.

Either party in a proceeding like the one at bar may have recourse to the bankrupt's books, if he has kept any, and if his memory is at fault with respect to any matter or item which is disclosed by the books, if such books are shown to be correct, such fault of memory may be

then corrected by the books. Without discussing the subject further, it must suffice to say that the court restricted appellant's counsel too much in the examination of the bankrupt. This error, however, will not likely occur again, and we think all that is necessary is to call the court's attention to the general rule which he should adopt and pursue in this regard.

In concluding this opinion, we remark that, before the trustee in bankruptcy can recover in an action of this kind, he must show by a preponderance of the evidence: (1) that the transfer of the property in question which it is claimed constituted a preference was made within four months of the filing of the petition in bankruptcy; (2) that the bankrupt was insolvent at the time of the transfer within the purview of the bankruptcy act; (3) that the preferred creditor knew, or had reasonable cause to believe, that the bankrupt was insolvent at the time of the transfer, and that such transfer was intended as a preference; and (4) that the effect of the transfer was to give the preferred creditor a greater percentage of his claim than other creditors of the same class could obtain from the bankrupt's estate if the transfer is permitted to stand. All of the foregoing propositions involve questions of fact and must be found as such, unless there is no evidence to support them, or where the evidence is all one way and without conflicting inferences.

For the reasons stated, the judgment is reversed and the cause remanded to the district court, with directions to grant a new trial and to proceed with the case in accordance with the views herein expressed, appellant to recover costs.

McCARTY and STRAUP, JJ., concur.